WEIL, GOTSHAL & MANGES LLP
Attorneys for Reorganized Debtors
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
Gary T. Holtzer, Esq. (GH-7732)
Howard B. Comet (HC-4353)
Alan R. Feigenbaum (AF-4183)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re                                                          :
                                                               :
SILICON GRAPHICS, INC., et al.,                                : Chapter 11 Case No.
                                                               : 06 - 10977 (BRL)
                                    Debtors.                   : (Jointly Administered)
                                                               :
---------------------------------------------------------------x
                                                               :
SILICON GRAPHICS, INC.,                                        : Adversary Proceeding
                                                               :
                                    Plaintiff,                 : No. 06-1560 (BRL)
                                                               :
            v.                                                 :
                                                               :
MERRILL LYNCH TRUST CO. OF                                     :
CALIFORNIA, et al.,                                            :
                                                               :
                                    Defendants.                :
                                                               :
---------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF SILICON GRAPHICS, INC.'S MOTION TO STRIKE DEFENDANT ROBERT BISHOP'S AFFIRMATIVE DEFENSE OR, IN THE ALTERNATIVE, TO DISMISS COUNTERCLAIM**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1
STATEMENT OF FACTS .................................................................................................... 2
    A.    The Parties ................................................................................................... 2
    B.    The Non-Qualified Deferred Compensation Plan ....................................... 2
    C.    The Trust Agreement ................................................................................... 4
    D.    The Complaint ............................................................................................. 5
    E.    Bishop's Answer and Affirmative Defense ................................................. 6
ARGUMENT ........................................................................................................................ 7
THE COURT SHOULD STRIKE BISHOP'S CLAIM FOR A CONSTRUCTIVE TRUST ................................................................................................................................. 7
    A.    LEGAL STANDARD .................................................................................. 7
    B.    THE SILICON GRAPHICS DEFERRED COMPENSATION PLAN IS GOVERNED BY ERISA .............................................................................. 8
    C.    BISHOP'S DEMAND FOR A CONSTRUCTIVE TRUST UNDER CALIFORNIA LAW IS PREEMPTED BY ERISA ...................................... 10
        1.    State Law Claims Relating To Top-Hat Plans Are Preempted By ERISA ............................................................................................. 10
        2.    The Plan's Choice of Law Clause Does Not Save Bishop's State Law Claim From Being Preempted By ERISA ..................................... 11
CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

**CASES**

*Allstate Ins. Co. v. My Choice Medical Plan for LDM Tech., Inc.*, 298 F. Supp. 2d 651 (E.D. Mich. 2004) ............................................................................................................. 12

*Bigda v. Fischbach*, 898 F. Supp. 1004 (S.D.N.Y. 1995) ................................................. 11

*Cogan v. Phoenix Life Ins. Co.*, 310 F.3d 238 (1st Cir. 2002) .......................................... 11

*Demery v. Extebank Deferred Compensation Plan*, 216 F.3d 283 (2d Cir. 2000) ......... 9,10

*Federal Deposit Ins. Corp. v. Eckert Seamans Cherin & Mellott*, 754 F. Supp. 22 (E.D.N.Y. 1990) ................................................................................................................... 7

*Federal Deposit Ins. Corp. v. Raffa*, 935 F. Supp. 119 (D. Conn. 1995) ............................ 7

*Hinfin Realty Corp. v. The Pittston Co.*, 206 F.R.D. 350 (E.D.N.Y. 2002) ........................ 8

*In re IT Group, Inc.*, 448 F.3d 661 (3rd Cir. 2006) .................................................... 3, 4, 8

*In re IT Group, Inc.*, 305 B.R. 402 (Bankr. D. Del. 2004) ............................................... 10

*In re Outboard Marine Corp.*, 278 B.R. 778 (N.D. Ill. 2002) ............................................ 5

*Louisiana Health Serv. & Indem. Co. v. Rapides Healthcare Sys.*, 461 F.3d 529 (5th Cir. 2006) ............................................................................................................. 12

*Northwestern Mutual Life Ins. Co. v. Resolution Trust Corp.*, 848 F. Supp. 1515 (N.D. Ala. 1994) .............................................................................................................. 9, 11

*Peters v. Lincoln Elec. Co.*, 285 F.3d 456 (6th Cir. 2002) ............................................... 11

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987) ......................................................... 10

*Prudential Ins. Co. of America v. Doe*, 140 F.3d 785 (8th Cir. 1998) ............................. 12

*Reliable Home Health Care, Inc. v. Union Central Ins. Co.*, 295 F.3d 505 (5th Cir. 2002) ........................................................................................................................... 11

*In re Sears Retiree Group Life Ins. Litig.*, 90 F. Supp. 2d 940 (N.D. Ill. 2000) ............... 12

*Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293 (Bankr. S.D.N.Y. 1999) ........................................................................................................ 8

*Tompkins v. United Healthcare of New England, Inc.*, 203 F.3d 90 (1st Cir. 2000).........12

*Tormey v. General American Life Ins. Co.*, 973 F. Supp. 805 (N.D. Ill. 1997)..................12

*Valentine v. Carlisle Leasing Int'l Co.*, 1998 WL 690877 (N.D.N.Y. 1998).....................11

## STATUTES

29 U.S.C. §§ 1131-1145 ...............................................................................................10

29 U.S.C. § 1132(a)(1)(B) ............................................................................................10

29 U.S.C. § 1144(a) ......................................................................................................10

Bankr. R. P. § 7012(b) ............................................................................................1, 7, 8

Fed. R. Civ. P. § 12(b)(6).........................................................................................1, 8

Fed. R. Civ. P. § 12(f)..............................................................................................1, 7

## JOURNALS

Kathryn J. Kennedy, *A Primer on the Taxation of Executive Deferred Compensation Plans*, 35 J. Marshall L. Rev. 487............................................................2, 3

## TREATISES

Barry K. Downey, Henry A. Smith III, and Michael P. Connors, *Non-Qualified Deferred Compensation Answer Book* 1-16 (6th ed. 2006)................................................3

Bruce J. McNeil, *Nonqualified Deferred Compensation Plans*, § 1-27 (2007 ed.).............3

David J. Cartano, *Taxation of Compensation & Benefits* §§ 20.01, 20.02 (2004) ..............3

## OTHER

PLR 8113107, 1980 WL 137740 (Dec. 31, 1980).............................................................4

Plaintiff Silicon Graphics, Inc. ("Silicon Graphics" or "Debtor") respectfully submits this memorandum of law in support of its motion to strike or dismiss the affirmative defense asserted in the Answer and Defenses to Complaint Pursuant to Bankruptcy Code Section 542 to Compel Turn Over of Property, dated November 8, 2006 (the "Answer") filed by Defendant Robert Bishop. Silicon Graphics moves to strike pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, which is made applicable here by Rule 7012(b) of the Rules of Bankruptcy Procedure. In the alternative, if the Court treats Bishop's affirmative defense as a counterclaim, Silicon Graphics moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which is also made applicable here by Rule 7012(b) of the Rules of Bankruptcy Procedure. For the reasons set forth below, Bishop's affirmative defense should be stricken or dismissed in its entirety.

## PRELIMINARY STATEMENT

This case involves an opportunistic attempt by Robert Bishop, the former Chairman and Chief Executive Officer of Silicon Graphics, to obtain a priority recovery of funds allegedly owed to him under a non-qualified deferred compensation plan (the "Plan"). Bishop's Answer includes an "affirmative defense" that asks the Court to impose a constructive trust under California state law in order to enforce his right to the deferred compensation. However, Bishop's "affirmative defense" (which is more appropriately characterized as a counterclaim) concerns an employee benefit plan governed by the Employee Retirement Income Security Act ("ERISA"), which preempts state law causes of action relating to employee benefit plans, including state law causes of action seeking the imposition of a constructive trust. Accordingly, Bishop's attempt to accomplish an end run around ERISA is impermissible as a matter of law, and the Court should strike or dismiss his constructive trust claim.

## STATEMENT OF FACTS

### A. The Parties

On May 8, 2006, Silicon Graphics and certain of its direct and indirect subsidiaries, as debtors in possession (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code"). (Compl. at ¶ 4). On September 15, 2006, the Debtors filed with this Court their First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated July 27, 2006, as Modified (the "Plan of Reorganization"). On September 19, 2006, this Court entered an order confirming the Plan of Reorganization. On October 17, 2006, the Effective Date (as defined in the Plan of Reorganization) occurred, and the Debtors emerged from chapter 11.

From August 23, 1999 through January 27, 2006, Defendant Robert Bishop was the Chairman and Chief Executive Officer of Silicon Graphics. (Ans. at ¶ 17). As Bishop explains in the proof of claim he has also filed, although a new Chairman and Chief Executive Officer was appointed on January 27, 2006, Bishop remained a member of Silicon Graphics' board of directors until the Effective Date.[1]

### B. The Non-Qualified Deferred Compensation Plan

On July 1, 1994, Silicon Graphics established a non-qualified deferred compensation plan for the benefit of certain highly compensated management employees and members of the Silicon Graphics board of directors. (Compl. at ¶ 6). A non-qualified deferred compensation plan is an agreement by an employer, in this case Silicon Graphics, to defer the payment of compensation to a select group of highly compensated management employees for services that are currently being performed. Kathryn J. Kennedy, *A Primer on the Taxation of Executive Deferred Compensation Plans*, 35 J. Marshall L. Rev. 487, 494 (2002). The primary

---

[1] The Court may take judicial notice of Bishop's proof of claim.

purpose of a deferred compensation plan is to "defer the payment of taxes" by plan participants. *In re IT Group, Inc.*, 448 F.3d 661, 664 (3rd Cir. 2006) (quoting David J. Cartano, *Taxation of Compensation & Benefits* § 20.01, at 709 (2004)). By deferring payments to plan participants, the participants' tax liability for those payments is also deferred until the payments are received, which is usually after retirement or termination of employment. By the time an employee participating in the plan retires or is terminated, the employee will likely be in a lower tax bracket, thus decreasing the amount of taxes that the employee must pay. *Id.* (citing David J. Cartano, *Taxation of Compensation & Benefits* § 20.02[A], at 710 (2004)).

To reap the tax benefits of deferred compensation plans, it is essential that plan participants do not have rights that attach to any specific funds. If plan participants do have rights that attach to specific funds, they will be deemed to have constructively received income for purposes of the Internal Revenue Code, and thus be unable to defer tax liability. Kennedy, 35 J. Marshall L. Rev. at 496-97; 1 Bruce J. McNeil, *Nonqualified Deferred Compensation Plans*, § 1-27 (2006 ed.). To prevent plan participants' rights from attaching to any specific funds, the plan must establish that the compensation that will ultimately be paid to plan participants will be paid from the general assets of the employer. Those assets must therefore be subject to the claims of the employer's general, unsecured creditors in the event that the employer becomes insolvent. Barry K. Downey, Henry A. Smith III, and Michael P. Connors, *Non-Qualified Deferred Compensation Answer Book* 1-16 (6th ed. 2006).

The Silicon Graphics deferred compensation plan provides that Silicon Graphics "shall pay all of the accrued benefits from its general assets." *See* Non-Qualified Deferred Compensation Plan, at 1, ¶ 4 (attached hereto as Exh. A). The Plan further provides that each participant "will have the same rights as a general creditor of [Silicon Graphics]." *Id.* at 9 (Article IX). By providing that plan participants have no greater legal rights than Silicon

Graphics' unsecured creditors, Silicon Graphics ensured that its employees who were eligible for participation in the Plan did not constructively receive income prior to an actual payment, and thus could obtain the tax benefits associated with deferred compensation plans.

### C.     The Trust Agreement

After establishing the Plan, Silicon Graphics and Merrill Lynch Trust Co. of California ("Merrill Lynch") entered into an August 18, 1994 trust agreement (the "Trust Agreement") under which Silicon Graphics agreed to contribute assets to be held by Merrill Lynch in an irrevocable trust (the "Trust"). (Compl. at ¶ 7). Merrill Lynch agreed to disburse funds from the Trust to fund payments by Silicon Graphics to plan participants pursuant to the terms of the Plan. *Id.* The Trust Agreement provides that the Trust is a "grantor trust, of which [Silicon Graphics] is the grantor." (Compl., at ¶ 8).

The purpose of a grantor trust in connection with a deferred compensation plan (also referred to as a "rabbi trust") is to identify funds that the employer can use to satisfy its obligations to plan participants.[2] The funds or assets in the trust, however, remain the property of the employer. Kennedy, 35 J. Marshall L. Rev. at 527. As set forth in the Silicon Graphics Plan, "the corpus and income of the Trust [shall be] treated as assets and income of [Silicon Graphics] for federal and state income tax purposes." Exh. A. at 1.

If the employer becomes insolvent, the assets in the grantor trust are the property of the employer's bankruptcy estate. Plan participants can still defer tax liability, even though the employer has established a trust to fund future payments, because the participants do not have any right to the trust funds prior to an actual distribution. *In re IT Group*, 448 F.3d at 665

---

[2] The term "rabbi trust" derives from a private letter ruling issued by the Internal Revenue Service in 1980. PLR 8113107, 1980 WL 137740 (Dec. 31, 1980). In that ruling, the Internal Revenue Service concluded that a rabbi would not be taxed on funds contained in a trust that the congregation had established for his benefit, until the rabbi received the funds.

("The employee is not taxed until receipt of benefits as long as the trust funds are subject to the claims of the employer's general creditors.") (quoting David J. Cartano, *Taxation of Compensation & Benefits* § 20.05[D][3], at 735 (2004)); *In re Outboard Marine Corp.*, 278 B.R. 778, 785 (N.D. Ill. 2002) ("Because the trust corpus technically remains property of the employer, the beneficiaries of the trust are not taxed on their portion of the Trust corpus or Trust proceeds until the assets are actually distributed to the beneficiaries.").

The Silicon Graphics Plan provides that "the assets of the Trust shall at all times be subject to the claims of the general creditors of [Silicon Graphics]." Exh. A, at 2, ¶ 9. The Trust Agreement further provides that "At all times during the continuance of this Trust, as provided in Section 1(d) hereof, the principal and income of the Trust shall be subject to claims of general creditors of [Silicon Graphics] under federal and state law." (Compl., Exh. A, at §§ 3(a); 1(d)). Accordingly, participants in the Plan (including Bishop) do not have any rights that attached to the Trust assets.

## D.  The Complaint

On June 26, 2006, Silicon Graphics filed the complaint against Merrill Lynch pursuant to Section 542 of the Bankruptcy Code to compel Merrill Lynch to turn over the assets of the Trust to the Debtor's bankruptcy estate. (Compl. at ¶ 1). By stipulation entered into between Silicon Graphics and Merrill Lynch dated August 25, 2006, Merrill Lynch agreed to turn over the assets. This Court entered a judgment dated August 30, 2006 based on the stipulation, and Merrill Lynch turned over the assets. In a separate stipulation entered into between Silicon Graphics and Bishop dated August 29, 2006, Bishop agreed that he would not object to the turnover of assets by Merrill Lynch to Silicon Graphics so long as any claims to the assets by Bishop were preserved.

E. **Bishop's Answer and Affirmative Defense**

In his Answer, Bishop alleges that when he assumed the position of Chairman and Chief Executive Officer of Silicon Graphics, he became eligible for participation in the Plan. (Ans. at ¶ 18). According to Bishop, Silicon Graphics "wrongfully withheld" a portion of the distribution to which he was entitled in 2004, as well as the entirety of the distribution to which he was entitled in 2006. (Ans. at ¶ 27). By virtue of the alleged withholding, Bishop contends in his "affirmative defense" that the Court should impose a constructive trust in his favor pursuant to California Civil Code Sections 2223-2224. (Ans. at ¶ 26). Bishop "demands judgment" for more than $1 million in deferred compensation allegedly due to him in accordance with the Plan.

Specifically, Bishop alleges that Silicon Graphics improperly withheld a portion of the deferred compensation that was required to be paid to him in 2004 and all of the deferred compensation that should have been paid to him in 2006. (Ans. at ¶¶ 23-24). Although these allegations cannot (and need not) be disputed in the context of this motion to strike or dismiss, Silicon Graphics does in fact dispute them.[3]

---

[3] A portion of Bishop's deferred compensation was withheld in 2004 pursuant to a rule that compensation must be deferred for at least two years before it can be paid. This rule is designed to benefit plan participants by forestalling IRS claims that the compensation was constructively received at the time it was deferred. When the decision to withhold the 2004 payment was made, Bishop was the Chairman and CEO of Silicon Graphics. Thus, the decision was made by Bishop's own subordinates, and prior to 2006, Bishop did not dispute it. With respect to the 2006 payment, Bishop had designated a later payment date, but approximately one month before Silicon Graphics filed its chapter 11 petition (i.e., well within the preference period), Bishop requested an "early distribution" of his deferred compensation. Bishop's pleading does not mention that he was still a member of the Silicon Graphics Board when he made that request. Because of SGI's financial situation at that time, the rest of the Board voted to deny Bishop's request.

# ARGUMENT

# THE COURT SHOULD STRIKE BISHOP'S CLAIM FOR A CONSTRUCTIVE TRUST

The Silicon Graphics deferred compensation plan is subject to the exclusive enforcement provisions of ERISA. Therefore, ERISA preempts state law causes of action that seek to enforce the terms of the deferred compensation plan. Bishop's "affirmative defense" seeks to enforce the terms of the Plan through the imposition of a constructive trust under California law. Accordingly, because ERISA preempts state law, the Court should strike Bishop's affirmative defense.

## A. LEGAL STANDARD

Rule 12(f) of the Federal Rules of Civil Procedure, made applicable by Rule 7012(b) of the Bankruptcy Rules of Procedure, states that "the court may order stricken from any pleading any insufficient defense." Fed. R. Civ. P. 12(f). A motion to strike an affirmative defense pursuant to Rule 12(f) should be granted where it is clear that the moving party "would succeed despite any state of facts which could be proved in support of the defense." *Federal Deposit Ins. Corp. v. Eckert Seamans Cherin & Mellott*, 754 F. Supp. 22, 23 (E.D.N.Y. 1990). Specifically, if the affirmative defense is insufficient as a matter of law, "the defense should be stricken to eliminate the delay and unnecessary expense from litigating the invalid claim." *Id.*; *see also Federal Deposit Ins. Corp. v. Raffa*, 935 F. Supp. 119, 123 (D. Conn. 1995) ("An affirmative defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstances.").

In this case, the Court could also treat Bishop's "affirmative defense" as a counterclaim. Rule 8(c) of the Federal Rules of Civil Procedure, made applicable by Rule 7008(a) of the Bankruptcy Rules of Procedure, provides that "When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if

justice so requires, shall treat the pleading as if there had been a proper designation." In determining whether a party has pled an affirmative defense or asserted a counterclaim, courts look to whether the pleading seeks to obtain a judgment. *Hinfin Realty Corp. v. The Pittston Co.*, 206 F.R.D. 350, 354-55 (E.D.N.Y. 2002). Here, because Bishop's Answer explicitly "demands judgment" in the amount of $1 million, his "affirmative defense" can be treated as a counterclaim. *Id.*

If the Court treats Bishop's affirmative defense as a counterclaim, the Court should dismiss the counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A court should grant a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable by Rule 7012(b) of the Bankruptcy Rules of Procedure, where it is clear that the party asserting the claim can prove no set of facts in support of its claim that would warrant relief. *Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 309 (Bankr. S.D.N.Y. 1999).

### B. THE SILICON GRAPHICS DEFERRED COMPENSATION PLAN IS GOVERNED BY ERISA

The Silicon Graphics deferred compensation plan is a particular type of benefit plan known as a "top-hat" plan, because it was designed to benefit only a select group of highly compensated employees. Exh. A, at 1, ¶ 1. Top-hat plans are governed only by ERISA's administrative and enforcement provisions, as opposed to ERISA's substantive provisions. *In re IT Group*, 448 F.3d at 664 (top-hat plans are "subject to ERISA's administrative and enforcement provisions, but exempt from the substantive provisions that regulate plan funding and impose fiduciary duties").

A deferred compensation plan is a "top-hat" plan if it is (1) unfunded and (2) maintained by an employer primarily for the purpose of providing deferred compensation for a select group of highly compensated management employees. *Demery v. Extebank Deferred*

*Compensation Plan*, 216 F.3d 283, 287 (2d Cir. 2000). The Silicon Graphics Plan satisfies both of these criteria.

A plan under which benefits are to be paid "solely from the general assets of the employer" is considered unfunded. *Demery*, 216 F.3d at 287; *see also In re IT Group*, 488 F.3d at 668. The Silicon Graphics Plan provides that any benefits accrued in connection with the Plan shall be paid from Silicon Graphics' "general assets." Exh. A, at 1, ¶ 4. In other words, the participants' rights in the Plan are no greater than "the same rights as a general creditor of [Silicon Graphics]." *Id.* at 9 (Article IX). Therefore, the Plan was unfunded for purposes of ERISA because participants in the Plan did not receive, either actually or constructively, any income under the Plan or any rights in assets of Silicon Graphics until the actual date of distribution.

An employer "may set aside deferred compensation amounts in a segregated fund or trust without jeopardizing a plan's 'unfunded' status if the fund or trust remains 'subject to the claims of the employer's creditors in the event of insolvency or bankruptcy.'" *In re IT Group*, 488 F.3d at 665. Thus, although a trust was established in connection with the Silicon Graphics Plan, the Plan itself provides that the establishment of the Trust does "not alter the characterization of the Plan as 'unfunded' for purposes of the Employee Retirement Income Security Act." *Id.*, ¶ 10. The Trust Agreement further reiterates that the Trust "shall not affect the status of the Plan(s) as an unfunded plan." (Compl., Exh. A, at 1). Because the terms of the Trust Agreement "plainly do not give [Bishop, or any other plan participant] a greater legal right to the funds [in the Trust] than that possessed by an unsecured creditor," the Plan remains unfunded for purposes of ERISA. *Demery*, 216 F.3d at 287; *Northwestern Mutual Life Ins. Co. v. Resolution Trust Corp.*, 848 F. Supp. 1515, 1518-19 (N.D. Ala. 1994) ("If an employer creates

a so-called 'rabbi' trust to hold assets that finance a benefit plan, the plan remains 'unfunded' for ERISA purposes.").

In addition to being unfunded, the Silicon Graphics Plan was designated for a select group of highly compensated employees. The Recitals in the Plan itself establish that it was to be maintained "for the benefit of a select group of management or highly compensated employees." Exh. A, at 1, ¶ 1. As the Chairman and Chief Executive Officer of Silicon Graphics, Bishop was part of the "select group" of employees entitled to participate in the Plan.

## C. BISHOP'S DEMAND FOR A CONSTRUCTIVE TRUST UNDER CALIFORNIA LAW IS PREEMPTED BY ERISA

### 1. State Law Claims Relating To Top-Hat Plans Are Preempted By ERISA

As discussed above, top-hat plans are governed by the administrative and enforcement provisions of ERISA, which are embodied in 29 U.S.C. §§ 1131-1145. *Demery*, 216 F.3d at 287. The terms of a deferred compensation plan can thus be enforced under ERISA. 29 U.S.C. § 1132(a)(1)(B). At the same time, ERISA's enforcement provisions provide that state law claims relating to employee benefit plans are preempted. 29 U.S.C. § 1144(a) (providing that ERISA "shall supersede all State laws insofar as they now or hereafter relate to any employee benefit plan"). A state law "relate[s] to" an employee benefit plan "if it has a connection with or reference to such a plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987).

Bishop's "affirmative defense" is a constructive trust claim to enforce the terms of the Silicon Graphics deferred compensation plan under California law. Thus, there can be no dispute that Bishop's constructive trust claim "relate[s] to" an employee benefit plan and is preempted. Indeed, it is well-settled that state law claims relating to employee benefit plans, including top-hat plans, are preempted by ERISA. *E.g., In re IT Group, Inc.*, 305 B.R. 402, 413-14 (Bankr. D. Del. 2004) (dismissing, on ERISA preemption grounds, tortious interference with

contract claim brought in connection with top-hat plan), *aff'd* 323 B.R. 578 (D. Del. 2005), *aff'd*, 448 F.3d 661 (3rd Cir. 2006); *Valentine v. Carlisle Leasing Int'l Co.*, 1998 WL 690877, at *4-5 (N.D.N.Y. Sept. 30, 1998) (Pooler, J.) (state law claims relating to top hat plan were preempted by ERISA); *Bigda v. Fischbach*, 898 F. Supp. 1004, 1016 (S.D.N.Y. 1995) ("ERISA preempts state law causes of action regarding top hat plans"), *aff'd*, 101 F.3d 108 (2d Cir. 1996); *Reliable Home Health Care, Inc. v. Union Central Ins. Co.*, 295 F.3d 505 (5th Cir. 2002) (state law fraud claims relating to top-hat plan were preempted by ERISA).[4]

Bishop's attempt to secure a constructive trust under California law is also preempted by ERISA. *Foley v. American Elec. Power*, 425 F. Supp. 2d 863, 868-89 (S.D. Ohio) (ERISA preempted state law claims relating to top hat plan, including constructive trust claim); *Northwestern Mutual Life Ins. Co.*, 848 F. Supp. at 1519 (state law constructive trust and unjust enrichment claims relating to top-hat plan were preempted by ERISA).

2. **The Plan's Choice of Law Clause Does Not Save Bishop's State Law Claim From Being Preempted By ERISA**

In his Answer, Bishop avers that the Silicon Graphics Plan provides that it shall be construed according to the laws of the State of California. (Ans. at ¶ 25). Bishop appears to suggest that the choice of law clause in the Plan makes his claim for a constructive trust under California state law permissible in spite of the express preemption of state law claims in ERISA. Regardless of the choice of law clause, Bishop's constructive trust claim is still preempted by ERISA.

---

[4] *See also Cogan v. Phoenix Life Ins. Co.*, 310 F.3d 238, 242-43 (1st Cir. 2002) (affirming preemption of breach of contract claim related to top hat plan as required by ERISA); *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 468 (6th Cir. 2002) (state law breach of promises claim for denial of benefits under Supplemental Executive Retirement Plan preempted by ERISA).

Choice of law clauses providing for an applicable state law are common in ERISA plans.[5] However, a choice of law clause does not enable plan participants to waive the preemption of state law causes of action required by ERISA. *Louisiana Health Serv. & Indem. Co. v. Rapides Healthcare Sys.*, 461 F.3d 529, 533 (5th Cir. 2006) (governing law clause does not impact whether ERISA preempts state law); *Tompkins v. United Healthcare of New England, Inc.*, 203 F.3d 90, 97 (1st Cir. 2000) ("we find no case holding that parties may contractually waive the right to assert ERISA preemption"); *Prudential Ins. Co. of America v. Doe*, 140 F.3d 785, 791 (8th Cir. 1998) ("parties may not contract to choose state law as the governing law of an ERISA-governed plan").[6] Accordingly, the choice of law clause contained in the Plan, which designates California law, does not render ERISA's preemption provisions inapplicable to Bishop's demand for a constructive trust.

---

[5] *See generally* RIA Pension & Benefits Library, RIA Benefits Analysis, ¶ 139,620 (2006) (noting that "Employee benefit and retirement plans of a wide variety often include a provision to the effect that the plan will be interpreted under the laws of a particular state (often with the inclusion of the caveat that such law will apply to the extent not in conflict with ERISA or other federal laws).").

[6] *See also Allstate Ins. Co. v. My Choice Medical Plan for LDM Tech., Inc.*, 298 F. Supp. 2d 651, 655 (E.D. Mich. 2004) ("a choice-of-law provision cannot be used to contract around or out of federal law"); *In re Sears Retiree Group Life Ins. Litig.*, 90 F. Supp. 2d 940, 951 (N.D. Ill. 2000) ("A choice of law provision does not operate to waive the applicability of federal law regarding interpretation of an ERISA plan."); *Tormey v. General American Life Ins. Co.*, 973 F. Supp. 805, 811 (N.D. Ill. 1997) (rejecting argument that governing law clause waived ERISA preemption).

## CONCLUSION

For the foregoing reasons, Defendant Robert Bishop's claim for a constructive trust under California law, whether construed as an affirmative defense or a counterclaim, should be stricken or dismissed.

Dated: New York, New York
December 12, 2006

By: /s/ Howard B. Comet
Gary T. Holtzer, Esq. (GH-7732)
Howard B. Comet (HC-4353)
Alan R. Feigenbaum (AF-4183)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Fax: (212) 310-8007

Attorneys For Silicon Graphics, Inc.